# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 23-1273V

|  |  |
|---|---|
| GREG R. SPAYD,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: June 9, 2026 |

*Gary A. Butler, Massa Butler Giglione, Pittsburgh, PA, for Petitioner.*

*Katherine Carr Esposito, U.S. Department of Justice, Washington, DC, for Respondent.*

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On August 9, 2023, Greg R. Spayd filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine received on September

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

9, 2021. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

The parties were unable to settle the claim, and have now fully briefed entitlement and damages (ECF Nos. 34-36). For the reasons set forth herein, I find that Petitioner's shoulder pain likely began within 48 hours of vaccination, his pain was primarily limited to his vaccinated shoulder, no other condition would likely explain his post-vaccination symptoms, and that he is otherwise entitled to compensation. For damages, I award **$45,000.00** for actual pain and suffering, plus **$733.96** for past unreimbursable expenses.

## I.    Factual Evidence

### A.  Medical Records

Petitioner received a flu vaccine in his left deltoid on September 9, 2021 during a routine wellness exam with his primary care physician ("PCP"). Ex. 1 at 5; Ex. 7 at 37. The social history section of the record states that he "[d]oes not [e]xercise." Ex. 1 at 3. No musculoskeletal findings were reported on examination. *Id*. at 2.

A month and a half later (October 28, 2021), Petitioner returned to his PCP complaining of "sharp left anterior lateral shoulder pain after getting his flu vaccination."[3] Ex. 1 at 8. His pain had started to progress over the days following vaccination, interfering with exercises such as pushups, as well as taking off his shirt. *Id*. The record adds, "[n]o a sharp pain that then radiates from his anterior shoulder down the proximal aspect of the humerus" – which I interpret to mean that Petitioner likely *did* report such a radiating pain, and the word "no" at the beginning was likely a typo meant to say "now." *Id*. He had difficulty sleeping at night due to pain. *Id*. On examination, his left shoulder exhibited full active and passive range of motion ("ROM") with pain. *Id*. at 8. Petitioner was assessed with left shoulder pain "[d]ue to myofascial pain from prior inoculation." *Id*. at 7. Osteopathic manipulation therapy ("OMT") was applied, resulting in improvement in his pain. *Id*.

On November 3, 2021, Petitioner returned to his PCP, again reporting his pain as having started around the time of vaccination. Ex. 1 at 12. The OMT treatment provided at his last visit resulted in "significant improvement in pain," but only for two hours, after which his pain recurred. *Id*. at 13. His pain was worse with shoulder abduction and extension, and the pain had "migrated" somewhat laterally and inferiorly from the initial location. *Id*. He described it as a throbbing and sharp pain that resulted in difficulty putting on a seatbelt or shirt, and getting into his car. *Id*. On examination, his active and passive

---

[3] At this visit, the record misstated the date of vaccination as *October* 9, 2021. Ex. 1 at 7. When Petitioner returned less than a week later, the record correctly noted the vaccination date as *September* 9, 2021. *Id*. at 13. The misstatement of the vaccination date was likely a typo.

ROM were impaired "due to discomfort." *Id*. His PCP again applied OMT and prescribed non-steroidal anti-inflammatory medications and cold compresses. *Id*. at 12, 15. Petitioner's PCP also assessed him with "[r]ib cage region somatic dysfunction" – although the record does not document that Petitioner complained about rib pain; the only other reference to Petitioner's rib is in a section titled "Osteopathic Structural Exam," which states "RIB: R1 elevation," without further details *Id*. at 13.

On December 8, 2021, Petitioner saw an orthopedist for treatment of his left shoulder pain. Ex. 2 at 2-3. He reported that he had "recently [been] trying to do more fitness activities including running and weight training for the past year." *Id*. at 3. He was "pretty good until April and then in September" when he had received COVID-19 (in April) and flu (in September) vaccines in his left deltoid. *Id*. Two days after those vaccinations, Petitioner developed "insidious onset of pain." *Id*. His pain was now associated with progressive stiffness and inability to lift his arm above his head. *Id*. He described pain located deep in his shoulder and 'radiating about his scapula." *Id*. On examination, Petitioner exhibited "substantially reduced abduction, forward flexion, external rotation, and internal rotation." *Id*. The orthopedist found Petitioner's history and physical examination consistent with frozen shoulder and capsulitis, and administered a steroid injection and referred him for physical therapy ("PT"). *Id*.

Petitioner underwent a PT evaluation on December 16, 2021. Ex. 3 at 1. He stated that his pain began on the date of vaccination, explaining that after vaccination he had "normal injection site discomfort" that did not go away. *Id*. at 1, 3. He reported "pain across both of his biceps tendons on the L side." *Id*. He tried exercising to relieve the pain, but it worsened over the next few days. *Id*. He had been trying to get back to weightlifting four times a week since vaccination but was not able to do any exercises without discomfort. *Id*. If he rested his arm and then moved it, he experienced shooting pain into the top of his shoulder. *Id*. He was unable to wash his hair, put on a seat belt, or reach overhead. *Id*.

Petitioner stated that the steroid injection had helped with his resting pain, but not with the pain he experienced with movement. Ex. 3 at 3. He rated his pain as four out of ten, ranging from two at best to eight at worst. *Id*. On examination, his left shoulder exhibited reduced ROM and strength, with positive Speed's test results. *Id*. at 2. Over the next three months, Petitioner attended a total of 22 PT sessions. *Id*. at 3-47.

At his final PT session on March 9, 2022, Petitioner rated himself over 90% improved. Ex. 3 at 44. His left shoulder ROM was now nearly identical to that of his right shoulder. *Id*. at 45. The therapist noted that he had made "drastic improvements in the AROM of his L shoulder." *Id*. at 46. He continued to exhibit pain that was worse with motion and disturbed sleep. *Id*. at 44. He was unable to perform overhead activities, lift weights without pain, or play guitar. *Id*. He had a "palpable mass" at the injection site from

his COVID vaccine "that originally cause[d] him to have restrictions in his shoulder."[4] *Id*. at 46. A month later (April 18, 2022), Petitioner was formally discharged from PT, with a note stating that he was ready to try returning to his exercise routine. *Id*. at 48.

### B.  Testimonial Evidence

Petitioner has submitted two affidavits in support of his claim. Exs. 4, 16. He states that after receiving the flu vaccine, he experienced what he believed was "normal" soreness. Ex. 4 at ¶ 10. However, the pain became progressively worse over time. *Id*. at ¶ 11.

Petitioner asserts that he did not injure his shoulder exercising. Ex. 16 at ¶ 22. He now experiences chronic mild pain and mildly restricted ROM. *Id*. at ¶¶ 24,27, 28. He cannot lift as much weight, or do as many pushups, as he could before his SIRVA. *Id*. at ¶ 29.

Petitioner filed a letter from his physical therapist. Ex. 15. The letter is not sworn, which reduces its evidentiary value somewhat. The therapist states that Petitioner was seen for 22 PT sessions for left shoulder pain following vaccination. *Id*. Petitioner exhibited "significant range of motion deficits in all functional planes," along with pain reaching eight out of ten with motion. *Id*. Petitioner's quality of life was "significantly affected by his pain," which disturbed his sleep, impaired his ability to exercise, and left him in pain at rest. *Id*. He could not partake in usual stress-relieving hobbies such as playing his guitar. *Id*. Compensatory motion patterns resulted in dysfunction in surrounding soft tissues. *Id*. PT was able to restore his ROM to be comparable with his other shoulder, but was not able to eliminate his pain, leaving him with chronic pain. *Id*.

## II.    Factual Findings and Ruling on Entitlement

### A. Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must preponderantly demonstrate all matters required under Section 11(c)(1), including the factual circumstances surrounding his or her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical

---

[4] Neither party asserts that Petitioner experienced a prior history of left shoulder pain that would explain his post-vaccination symptoms, and at his examination on September 9, 2021 – the date of vaccination – his PCP did not record any musculoskeletal concerns or findings. Ex. 1 at 2. Therefore, whatever symptoms Petitioner may have experienced after his COVID-19 vaccination in April of 2021, they were likely transitory and no longer present when he received the subject vaccine. No further information has been provided concerning a mass on his shoulder from the COVID vaccine, and that vaccine is not covered in this program.

opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration as trustworthy evidence.   The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

In addition to requirements concerning the vaccination received and the lack of other award or settlement,[5] a petitioner must establish that he or she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he or she received. Section 11(c)(1)(C). The Vaccine Act further includes a "severity requirement," pursuant to which a petitioner demonstrate that they "suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine . . . ." Section 11(c)(1)(D).

"[T]he fact that a Petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) ("a discharge from medical care does not necessarily indicate there are no residual effects"). "A

---

[5] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception and has not filed a civil suit or collected an award or settlement for his or her injury. Section 11(c)(1)(A)(B)(E).

treatment gap . . . does not automatically mean severity cannot be established." *Law v. Sec'y of Health & Human Servs.*, No. 21-0699V, 2023 WL 2641502, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2023) (finding severity requirement met where Petitioner sought care for under three months and had met physical therapy goals but still lacked full range of motion and experienced difficulty with certain activities, then returned to care nearly five months later reporting stiffness and continuing restrictions in motion); *see also Peeples v. Sec'y of Health & Human Servs.*, No. 20-0634V, 2022 WL 2387749 (Fed. Cl. Spec. Mstr. May 26, 2022) (finding severity requirement met where Petitioner sought care for four months, followed by fifteen-month gap); *Silvestri v. Sec'y of Health & Human Servs.*, No. 19-1045V, 2021 WL 4205313 (Fed. Cl. Spec. Mstr. Aug. 16, 2021) (finding severity requirement satisfied where Petitioner did not seek additional treatment after the five-month mark).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

> (ii) Pain occurs within the specified time-frame;

> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

6

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

### B. Parties' Arguments on Entitlement

Petitioner argues that the record demonstrates that his shoulder pain began within 48 hours of vaccination. Petitioner's Motion for a Ruling on the Record, filed April 3, 2024, at *2-7 (ECF No. 34) ("Mot."). Petitioner relies on the medical records and testimonial evidence, as well as the absence of evidence placing the onset of his pain more than 48 hours after vaccination. Mot. at *6. He further argues that his pain was located primarily in his shoulder, and his claim is not defeated by records noting pain radiating from his shoulder. *Id*. at *7. Finally, he asserts that he did not injure his shoulder exercising. *Id*.

Respondent contends that Petitioner has not preponderantly established that the onset of his shoulder pain occurred within 48 hours of vaccination. Response, filed May 29, 2025, at *5-6 (ECF No. 35) ("Resp."). Respondent notes that Petitioner did not seek medical care for his shoulder until seven weeks after vaccination. Resp. at *6. And his first treatment record lists a vaccination date of *October* 9, 2021 – rather than the actual vaccination date of *September* 9, 2021 – followed by pain. *Id*. Respondent acknowledges, however, that the mistaken vaccination date is likely a typographical error. *Id*. And while Petitioner told his orthopedist that he developed insidious pain two days after vaccination, a literal reading of "after" means the event occurred *more than* 48 hours after that event. *Id*.

Respondent also asserts that Petitioner's pain was not limited to the vaccinated shoulder. Resp. at *6-7. Respondent cites a medical record noting radiating pain down Petitioner 's shoulder to the humerus, and emphasizes that Petitioner's PCP noted that his pain had migrated. *Id*. At his first orthopedist appointment, eh described pain "radiating about his scapula." *Id*. (citing Ex. 2 at 3). In November 2021, his PCP assessed him with "[r]ib cage region somatic dysfunction" – although the basis of this diagnosis is unclear. *Id*. Finally, at his PT evaluation, Petitioner reported pain across both of his biceps tendons on the left side, which Respondent asserts is outside of Petitioner's left deltoid. *Id*. (citing Ex. 3 at 3).

Finally, Respondent asserts that there is another explanation for Petitioner's shoulder pain: he may have injured his shoulder exercising. Resp. at *7-8. Respondent emphasizes that Petitioner's exercise habits, and the changes in his exercise, are "noted repeatedly in his medical record." *Id*. Prior to vaccination, Petitioner's medical records noted that he was physically inactive, but that changed at some point around the time of vaccination, because at his PCP appointment in October 2021, Petitioner reported that his shoulder pain was interfering with exercise activities such as pushups. *Id*. at 8*. In November 2021, Petitioner reported exercising five to six times a week; and in December he reported that he had been trying to do more fitness activities, including running and weightlifting, for the past year. *Id*.

On reply, Petitioner emphasized that he told his physical therapist that his pain began on the date of vaccination. Petitioner's Reply, filed June 5, 2025, at *2 (ECF No. 36) ("Reply"). And Petitioner reiterates that feeling pain in areas adjacent to the shoulder is not disqualifying. Reply at *2-3. Petitioner emphasizes that his pain primarily occurred in his shoulder. *Id*. Finally, Petitioner emphasizes that his sworn testimony is that he did not injure his shoulder exercising, and states that he did not "fabricate a false story." *Id*. at *3.

### C. Factual Findings on Onset

The record supports a finding that Petitioner's shoulder pain likely began within 48 hours of vaccination. Petitioner sought treatment for his shoulder pain less than two months after vaccination, and consistently related his pain to vaccination at that time and thereafter. At his first appointment, he described pain that progressed over the days following vaccination. Ex. 1 at 8. He specifically told the orthopedist that his pain began two days after vaccination – and I do not interpret that, under the circumstances, to mean onset starting *more than* two days thereafter. Ex. 2 at 3. He also told the physical therapist that his pain began on the date of vaccination. Ex. 3 at 1, 3. Finally, no other records corroborate the alleged late onset, while many records are consistent with a Table-consistent onset.

Petitioner did not seek medical treatment for almost two months post-vaccination, but such delay is not uncommon in SIRVA cases. *Tully v. Sec'y of Health & Human Servs.*, No. 21-1998V, 2024 WL 4533515 (Fed. Cl. Spec. Mstr. Sept. 20, 2024) (finding onset occurred within 48 hours although claimant did not seek care for two and a half months); *Diaz v. Sec'y of Health & Human Servs.*, 20-1003V, 2023 WL 8440873, at *6 (Fed. Cl. Spec. Mstr. Nov. 1, 2023) (finding onset was within 48 hours where the petitioner delayed seeking care for over three months after vaccination); *Buck v. Sec'y of Health & Human Servs.*, No. 19-1301V, 2023 WL 6213423, at *7 (Fed. Cl. Spec. Mstr. Aug. 23, 2023) (finding onset of pain occurred within 48 hours where the petitioner did not seek care for over three months and noting that a delay in seeking care is relevant to onset, but not dispositive).

### D. Petitioner's Pain Was Limited to his Vaccinated Shoulder

Additionally, the record establishes that, more likely than not, Petitioner's shoulder pain was limited to the shoulder in which he received the vaccine. I have previously found that references to symptoms originating in a claimant's shoulder and resulting in incidental symptoms elsewhere do not necessarily prevent a claimant from meeting the third SIRVA QAI. *See Valdez v. Sec'y of Health & Human Servs.*, No. 21-0394V, 2024 WL 1526536, at *6-7 (Fed. Cl. Spec. Mstr. Feb. 28, 2024) (finding third QAI satisfied despite pain radiating to upper arm and forearm because the petitioner *primarily* experienced a shoulder injury consistent with SIRVA); *Cross v. Sec'y of Health & Human Servs.*, No. 19-1958V, 2023 WL 120783, at *7 (Fed. Cl. Spec. Mstr. Dec. 2, 2022) ("claims involving musculoskeletal pain primarily occurring in the shoulder are valid under the Table even if there are additional allegations of pain extending to adjacent parts of the body, since the essence of the claim is that a vaccine administered *to* the shoulder *primarily* caused pain there") (emphasis in original).

In this case, Petitioner's pain was primarily located in his left, vaccinated shoulder. At times, he also complained of pain radiating to his humerus or scapula, and pain in his left biceps tendons. However, this sort of pain, originating in the shoulder and radiating to adjacent areas, does not necessarily disqualify a claim, and I find that it does not in this case. Petitioner's pain originated, and primarily manifested, in his left shoulder.

### E. Petitioner has Established that No Other Condition Explains his Post-Vaccination Symptoms

The evidence preponderantly supports a finding that Petitioner's exercise activities likely do not explain his post-vaccination symptoms. The records are not entirely consistent as to whether, and how much, Petitioner exercised prior to vaccination and thereafter. However, the record does not suggest that his shoulder pain resulted from exercise. Instead, the record supports a finding that Petitioner attempted to exercise to relieve his vaccine-related pain, and that his vaccine-related pain impaired his ability to perform certain exercises.

### F. Factual Findings on Remaining SIRVA QAI Criteria and Statutory Requirements

The remaining QAI and statutory requirements are not disputed, and I find that they are satisfied. The record does not contain preponderant evidence that Petitioner had a history of left shoulder pain that would explain his post-vaccination symptoms. Ex. 1. He exhibited reduced ROM. Ex. 2 at 3; Ex. 3 at 2. He received a covered vaccine in the United States. Ex. 1 at 5. He experienced residual effects of his injury for more than six months. Ex. 3 at 44. And he states that he has never been compensated in the form of an award, verdict, or settlement for his vaccine injuries, nor has he filed a civil action. Ex. 4 at ¶¶ 42-44.

Petitioner has established by preponderant evidence that all Table SIRVA and QAI requirements are established. Further, he has established all statutory requirements for entitlement. Thus, Petitioner is entitled to compensation.

## III.    Damages

### A. Legal Standard

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Section II of *Matthews v. Sec'y of Health & Human Servs.*, No. 22-1396V, 2025 WL 2606607 (Fed. Cl. Spec. Mstr. Aug. 13, 2025).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000.00." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[6]

### B. Parties' Damages Arguments

Petitioner seeks a pain and suffering award of $67,000.00, relying on decisions in *Clendaniel*, *Lang*, and *Marino*, in which claimants were awarded $60,000.00, $64,000.00, and $70,000.00, respectively.[7] Mot. at *12-14. Petitioner asserts that his injury exceeds the "mild" SIRVA featured in *Clendaniel*, emphasizing that the claimant in that case did not attend any PT. *Id*. at *12. Petitioner asserts that the *Lang* petitioner did not establish that her SIRVA impacted any personal or professional obligations, while Mr. Spayd's SIRVA impaired his ability to exercise, which he considers a personal obligation, and play his guitar. *Id*. at *13. The *Lang* petitioner was also diagnosed with cervical radiculopathy, which may have contributed to her symptoms. *Id*. Petitioner describes his injury as slightly more severe than that of the *Lang* petitioner. *Id*.

---

[6] *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

[7] *Clendaniel v. Sec'y of Health & Human Servs.*, No. 20-213V, 2021 WL 4258775 (Fed. Cl. Spec. Mstr. Aug. 18, 2021); *Lang v. Sec'y of Health & Human Servs.*, No. 21-0972V, 2025 WL 635313 (Fed. Cl. Spec. Mstr. Jan. 27, 2025); and *Marino v. Sec'y of Health & Human Servs.*, No. 16-0622V, 2018 WL 224736 (Fed. Cl. Spec. Mstr. Mar. 26, 2018).

Respondent proposes an award of not more than $35,000.00, citing five cases in which petitioners were awarded between $30,000.00 and $38,000.00. Resp. at *11-12. Respondent argues that Petitioner experienced a minor injury, with his last recorded symptoms exactly six months after vaccination. Id. at *10. During treatment, Petitioner received a steroid injection, OMT, and prescription medication, and attended 22 PT sessions. Id. at *11.

Respondent distinguishes the decisions Petitioner cites, asserting that the Clendaniel claimant sought care much sooner, had objective bursitis findings on imaging, and reported pain in excess of a year after vaccination – much longer than Mr. Spayd. Resp. at *12. Similarly, the Lang petitioner reported her injury sooner, pursued treatment for longer, and attended more PT. Id. at *13. The Marino claimant continued to experience pain more than two and a half years after vaccination, and experienced limitations in not just recreational tennis, but also her ability to fully perform her job duties. Id.

Petitioner replies that none of the five cases Respondent cites are analogous because the petitioners utilized no PT. Reply at *3-4. The Valdez[8] petitioner did not undergo a steroid injection or PT, and first sought treatment 75 days after vaccination – much later than Mr. Spayd. Id. at *4.

Petitioner further asserts that his pain did not end when his PT ended. Reply at *5. At his final PT session, Petitioner continued to experience pain in the left lateral forearm, disturbed sleep from pain, and was unable to perform overhead activities, play guitar, or lift weights without pain. Id. Petitioner emphasizes that he cited Marino for a discrete, but important, point: the special master in that case emphasized the claimant's loss of enjoyment in her hobby of playing tennis, which Petitioner views as similar to Mr. Spayd's loss of enjoyment of lifting weights and playing guitar. Id. at *6.

Petitioner cites two additional cases where claimants reported their injuries much later than Mr. Spayd, and received higher awards than Respondent's proposed award: Heiner and Rayborn, in which the petitioners received awards of $60,000.00 and $55,000.00, respectively.[9] Reply at *6. And he cites Dagen (in which the petitioner was awarded $65,000.00),[10] which he asserts is similar, with the claimant seeking care within

---

[8] Valdez v. Sec'y of Health & Human Servs., No. 21-394V, 2024 WL 1526536 (Fed. Cl. Spec. Mstr. Feb. 28, 2024) (awarding $35,000.00 in pain and suffering).

[9] Heiner v. Sec'y of Health & Human Servs., No.19-1339V, 2022 WL 4457901 (Fed. Cl. Spec. Mstr. Aug. 29, 2022); and Rayborn v. Sec'y of Health & Human Servs., No. 18-0226, 2020 WL 5522948 (Fed. Cl. Spec. Mstr. Aug. 14, 2020).

[10] Dagen v. Sec'y of Health & Human Servs., No. 18-0442V, 2019 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2019).

six weeks of vaccination, receiving one steroid injection and prescription medication, and participating in nine PT sessions. *Id*. at *7.

### C. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

The cases Petitioner cites are, for the most part, inadequate comparables. The *Lang* and *Clendaniel* petitioners both sought care sooner than Mr. Spayd (as did the *Dagen* claimant), and experienced injuries of greater duration. And Petitioner correctly points out that none of the claimants in cases cited by Respondent attended PT (making these cases less helpful).

*Rayborn*, however, is a better comparable determination. Both Mr. Spayd and the *Rayborn* petitioner experienced relatively mild injuries that they treated with a steroid injection and PT. The *Rayborn* petitioner's injury persisted for longer, but she also delayed seeking care for longer. Furthermore, at discharge, the *Rayborn* petitioner continued to experience greater deficits than Mr. Spayd. *Rayborn*, 2020 WL 5522948, at *3.

I find Petitioner's injury course to be most similar to *Gootee v. Sec'y of Health & Human Servs.*, No. 22-0827V, 2024 WL 5295109 (Fed. Cl. Spec. Mstr. Dec. 2, 2024), in which the claimant was awarded $43,000.00 in pain and suffering. Both the *Gootee* claimant and Mr. Spayd suffered mild injuries, and somewhat delayed seeking care for their pain – which did not defeat their claims, but suggested a milder injury. Both reported similar pain levels, treated with one steroid injection, and participated in similar amounts of PT. And while the *Gootee* claimant's injury persisted somewhat longer, that claimant also had a slightly better outcome, stating that he had completely returned to his pre-vaccination state. *Gootee*, 2024 WL 5295019, at *2. By contrast, when Mr. Spayd was discharged from PT, he stated that he was over 90% improved, but continued to experience some pain.

Taking these factors into consideration, I find that an award of **$45,000.00** for pain and suffering is appropriate in this case.

### Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I GRANT Petitioner's motion for a ruling on the record, and find that Petitioner suffered an injury that meets the definition for a Table SIRVA and is entitled to compensation. I find that $45,000.00 represents a fair and appropriate**

12

**amount of compensation for Petitioner's actual pain and suffering**.[11] Additionally, I find that Petitioner is entitled to **$733.96 in unreimbursable expenses**.[12]

Based on consideration of the record as a whole and arguments of the parties, **I award Petitioner a lump sum of $45,733.96, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of Court is directed to enter judgment in accordance with this Decision.[13]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[11] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[12] The parties agree that this sum is reimbursable. Mot. at *14; Resp. at *13-14.

[13] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.